UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEAN JOSEPH, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-379** |
| **FLUOR CORPORATION, ET AL.** | **SECTION "L" (5)** |

### ORDER & REASONS

Currently pending before this Court is the United States of America's Motion to Quash Subpoena and Motion to Dismiss Case Without Prejudice (Rec. Doc. 3). For the following reasons, IT IS ORDERED that this motion IS GRANTED.

## I. FACTUAL BACKGROUND

This case arises out of the removal of a state court subpoena, and the related subpoena enforcement proceedings, to this Court from the Civil District Court for the Parish of Orleans, State of Louisiana. On February 8, 2010, the subpoena in question was issued to Agent Daniel Hebert of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). The subpoena commanded the appearance and testimony of Agent Hebert at a trial scheduled to take place on March 8, 2010.

The underlying state court proceedings, at which Agent Hebert's testimony is requested, arise out of a fire that occurred in a FEMA trailer on August 25, 2006 in New Orleans, Louisiana. During the fire, Jean Joseph and Bernard Mabry, Jr. were injured. Mr. Mabry passed away 21 days after the fire. Subsequently, three separate lawsuits were filed including one by Ms. Joseph and her children, one by Mr. Mabry's widow, Vernadine Mabry, and one by Mr. Mabry's surviving son, Bernard Mabry, III. Named as defendants in these lawsuits were

Fleetwood Enterprises, Inc., Maytag Corp., Fluor Enterprises, Inc., and MMR Constructors, Inc. ("MMR"). The United States was not a party in any of these cases.

At the request of the New Orleans Fire Department, Agent Hebert assisted in the investigation of the fire. In connection with his investigation, Agent Hebert authored certain documents relating to the causes and origins of the fire. The United States maintains that the relevant documents have been produced pursuant to a request made under the Freedom of Information Act. Nevertheless, ATF has denied all requests to allow Agent Hebert to testify at the state court trial and has removed the subpoena to challenge its' validity in this Court.

## II.     PRESENT MOTION

The instant motion was filed on February 12, 2010. In their motion, the Government asks that this Court quash the subpoena at issue because Agent Hebert is an employee of the Department of Justice and is therefore entitled to decline to testify in response to a state court subpoena. They argue that a state court subpoena is an action against the United States Government from which the Department of Justice enjoys sovereign immunity. They point out that pursuant to federal regulations, the appropriate officials have declined to authorize Agent Hebert's testimony and that the Government therefore has not waived their sovereign immunity.

On February 28, 2010, MMR filed a memorandum in opposition to the Government's motion to quash.[1] MMR asserts that they complied with all federal regulations when they subpoenaed Agent Hebert's testimony and that the Government has offered no valid reason for

---

[1] On Monday, March 1, 2010, the Court received telephonic communication from Esmond Phelps Gay, counsel for MMR. Mr. Gay indicated that, due to recent developments, he was no longer opposed to the Government's motion. However, because the Government's motion remains pending, the Court feels that it is appropriate to address the issues raised in the parties' briefs at this time.

2

its unwillingness to authorize the desired testimony. Additionally, MMR asserts that the case law that the Government relies on has been subsequently eroded and no longer "stand[s] for the proposition that a federal agency may completely resist discovery efforts or trial testimony." *Memorandum in Opposition to United States' Motion to Quash Subpoena and Dismiss Case Without Prejudice*, at 4 (Rec. Doc. 6). If the Court grants the Government's motion, MMR alternatively requests that the Court find that the Government has consented to the use of the documents produced by Agent Hebert at trial and order that they be allowed into evidence at the trial.

## III.   LAW & ANALYSIS

### A.   Enforcement of the state court subpoena

The primary issue in this case is whether the ATF has the authority to direct one of their agents to refuse to comply with a state court subpoena without offering any explanation for their decision to withhold information. The law in the Fifth Circuit is clear that "Justice Department employees [have] the authority, when so ordered by superiors, to refuse to comply with a subpoena ordering disclosure of confidential files when the United States is not a party to a legal action." *Louisiana v. Sparks*, 978 F.2d 226, 234 (5th Cir. 1992). This authority also extends to live testimony that is sought from federal officials via subpoena. *Id.* This history and rationale of this rule of law is rooted in the concept of sovereign immunity, the "Housekeeping Privilege," and the "Touhy Doctrine."

The seminal case in this area of the law, and one which the Government relies on in support of their argument, is *Touhy v. Ragen*, 340 U.S. 462 (1951). In *Touhy*, an inmate subpoenaed an FBI agent in an attempt to procure certain documents that he felt would help him

3

to obtain a new trial. *Id.* at 463-465. The FBI agent, acting pursuant to instructions from the Attorney General in accordance with certain federal regulations, appeared at a hearing and declined to produce the subpoenaed documents. *Id.* At 465. After the FBI agent was held in contempt of Court, the United States Supreme Court held that the federal regulations at issue were lawful and that the FBI agent had therefore acted properly when, at the discretion of the Attorney General, he refused to produce the subpoenaed records. *Id.* at 468. The Court, however, was careful to note that its' holding was limited to the specific facts of the case. *Id.* at 467-68.

Although *Touhy* does not specifically discuss sovereign immunity, it is easy to see how the concept ties in to the Court's rationale. A subpoena issued by a state court against a federal employee is generally considered an action against the United States. *Boron Oil Co. v. Downie*, 873 F.2d 67, 69-71 (4th Cir. 1989). With this proposition in mind, the *Touhy* rule then makes it clear that a federal employee who, at the direction of his superiors, refuses to comply with a state court subpoena is acting within the scope of his authority. Accordingly, the Government will enjoy sovereign immunity from the enforcement of a state court subpoena as long as the Government has not waived their immunity. Gregory S. Coleman, Note, *Touhy and the Housekeeping Privilege: Dead but not Buried?*, 70 Tex. L. Rev. 685, 695-96 (1992).

In this case, like in *Touhy*, the government points to federal regulations which have established procedures for handling subpoena requests by third-parties to federal employees. These regulations require that:

> In any federal or state case or matter in which the United States is not a party, no employee or former employee of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files

4

>of the Department, or disclose any information or produce any material acquired
>as part of the performance of that person's official duties or because of that
>person's official status without prior approval of the proper Department official.

28 C.F.R. § 16.22. This regulation clearly requires authorization of the proper officials prior to the disclosure of agency information by an employee of that agency in response to a subpoena. Under both *Touhy* and *Sparks*, and the law as it now stands, there is little doubt that this regulation is valid. In this case, it is undisputed that authorization has not been granted by the proper official. Accordingly, this Court is bound to grant the Government's motion and to quash the subpoena.

While this is certainly the correct result under the law as it now stands, the Court feels that it may be appropriate for Congress or the United States Court of Appeals for the Fifth Circuit to reexamine this outdated and anachronistic rule. While the Federal Government certainly has a valid interest at stake in controlling the dissemination of proprietary information, this interest is tempered by the public's right to information. District Courts are more than capable of balancing these interests and determining when a subpoena should be quashed.

At the time of the *Touhy* decision, the statutory scheme that authorized the Attorney General to establish federal regulations governing the conduct of federal employees in response to subpoenas made it clear that "[t]he head of an Executive Department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301 (1954). In 1958, following the decision in *Touhy*, Congress recognized the importance of the public's right to information and attempted to limit the application of this provision by adding that "[t]his section does not authorize

5

withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301 (1982).  This statute is the source of what is known as the "Housekeeping Privilege."  Commentators have suggested that the statute, at least after this change, "is ministerial in nature and does not create an independent privilege."  Coleman, *supra*, at 714.  Despite this, Courts have continued to follow the *Touhy* rule.  *See, e.g.*, *Sparks*, 978 F.2d at 234.

However, courts and commentators have begun to recognize the erosion of the policies underlying the *Touhy* rule.  *See e.g.*, Coleman, *supra*.  The United States Court of Appeals for the Ninth Circuit has concluded that the best way to determine when a subpoena issued by a federal court should be quashed is through the application of traditional discovery rules.  *Exxon Shipping v. United States Dept. of Interior*, 34 F.3d 774, 779-80 (9th Cir. 1994) ("[W]e are confident that district courts can, and will, balance the government's concerns under the general rules of discovery.").  As the Court noted, the discovery rules would allow courts to balance the legitimate interests of the Government in keeping certain information confidential with the "individual's right to 'every man's evidence.'"  *Id.* At 780.

This court recognizes that *Exxon* dealt with a subpoena issued by a federal court in a case in which the federal agency itself was a party to the litigation.  The Court further notes that the *Exxon* court cited concerns with separation of powers in reaching its conclusion that sovereign immunity did prevent enforcement of the federally issued subpoena. *Id.* at 778.  While these important distinctions, and the law in the Fifth Circuit, require that the subpoena in this case be quashed, this Court sees no reason that a federal court cannot balance the relevant interests involved when the subpoena in question has been issued by a state court.  Accordingly, Congress or the Fifth Circuit may wish to take another look at this issue.

6

### B. Admissibility of Agent Hebert's reports at trial

MMR has alternatively requested that the Court find that the Government has consented to the use of the documents produced by Agent Hebert and order that they be allowed into evidence at the trial. If this case were being tried in a federal court, these documents would be admissible under Rule 803(8) of the Federal Rules of Evidence. Additionally, there is some support for the admissibility of these documents in a state court trial. *See* La. Code Evid. art 803(8); Fallon, Trial Handbook for Louisiana Lawyers § 26:15 (3d. ed. 2007). However, the admissibility of evidence at trial is ultimately a matter within the province of the state court and this Court declines to interfere in their decision.

## III. CONCLUSION

For the foregoing reasons, IT IS ORDERED that the United States of America's Motion to Quash Subpoena and Motion to Dismiss Case Without Prejudice (Rec. Doc. 3) IS GRANTED. IT IS FURTHER ORDERED that the subpoena in this case is QUASHED and this proceeding is DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this __1st_ day of __March__, 2010.

_____
UNITED STATES DISTRICT JUDGE